Chief Justice Robertson
delivered the Opinion of the Court.
A slave supposed to be the property of James Duncan, havmg been sold m satisfaction of an execution which had been issued against him in favor of Bishop, Coleman Duncan, who claimed the slave in virtue of some alleged transfer from James Duncan, afterwards sued Bishop, in . . 17 trespass, for the sale, and recovered two hundred and seventy seven dollars in damages.
Bishop then filed a bill in chancery for a new trial, alleging that, since the trial, he had discovered that he could prove by several persons, that both James and Coleman Duncan had admitted, sometime prior to the trial, that the pretended contract, in virtue of which Coleman claimed the slave, and had recovered damages, *16 Was only colorable, and was intended to frustrate tbe creditors of James; and alleging, also, that Coleman had assigned to James his judgment for damages, which exceeded the amount of the execution which had been satisfied by the sale of the slave; and therefore praying that, if a new trial should not be decreed, the court would decree a set-off, and a perpetual injunction for the amount of tbe execution against James Duncan, which had been returned satisfied in consequence of the sale of the slave.
The court having decreed the set-off, and dismissed the bill as to the residue, with ten per cent, 'damages, the appellant now insists, that the decree for dismission and for damages is erroneous.
As to the damages decreed, it is necessary only to remark, that there is no error in that particular, if the partial dissolution of the injunction was right; which last and more important question, therefore, is the only one to be now considered.
There is no proof, or even suggestion, that the judgment for damages was fraudulently procured, except so far as every judgment which the party obtaining it knew to be unjust, might be deemed to have been procured fraudulently.
If then the appellant be entitled to any other' decree than that which was rendered, it must be only in conse. quence of the alleged discovery — a decree that, unless the appellees will consent to a new trial of Coleman Duncan’s action for damages, the injunction should be perpetuated for the whole amount of the judgment; for the Chancellor could not revise the judgment, or adjudicate on the merits of the action at law; and the only ground on which he could have decreed the set-off, is, that, in consequence of the judgment against Bishop, he had made nothing upon his execution against James Duncan, which had been returned satisfied; and that, having therefore an equitable claim against him for the amount of the execution so satisfied and returned, he therefore might have been entitled to a set-off against Coleman’s judgment, which, in consequence of his assignment, belonged equitably to James.
*17 But the well established rules of equity will not allow a decree for a new trial. Not only was the alleged fraud involved in the issue of the case at law, but there is no sufficient allegation that the appellant might not, by or- ° 1 r 0 7*/ v i **i t , • i i dmary and proper vigilance and exertion, have been enabled to avail himself, on the trial, of the benefit of the testimony alleged to have been discovered since the trial, or to have obtained a new trial upon motion. The stability of rights fairly adjudged, the expediency of putting a reasonable end to litigation, and the security of justice all forbid that the Chancellor should interpose in such a case and disturb the judgment — Wells vs. Phelps, 4 Bibb, 563; Findley vs. Nancy, 3 Monroe, 403; Daniel vs. Daniel, 2 J. J. Marshall, 52; Ewing vs. Price, 3 Ib. 522; Adams vs. Payne, 5 Littell's Reports, 108; Hunt vs. Boyier, 1 J. J. Marshall, 484, 6.
Consequently, however satisfactorily the facts now exhibited may tend to prove the alleged fraud, and the consequent injustice of the judgment, authority and policy forbid the interference of the chancellor beyond the extent of the decree which has been rendered.
Wherefore, the decree of the Circuit Court must be affirmed.