Mr. Justice Walker, delivered the opinion of the Court. May filed his bill against Jamison and others, to injoin the collection of a judgment recovered by Jamison against May, in an action of debt upon the transcript of a judgment rendered in the circuit court of Monroe county, Alabama, in a suit in detinue, brought by Jamison against May, for the recovery of a slave. At the appearance term, Jamison demurred to the bill; but the court overruled his demurrer, and rendered a final decree perpetually enjoining the judgment of the Union circuit court. The case comes before us by appeal, and the question of error is, that the court below erred in overruling the demurrer, to the bill. Without setting forth in detail the various allegations in the bill, many of which are but remotely connected with the facts upon which the bill must, if at all, be sustained, it may suffice to state the substance of the material facts relied upon, which are: That, on the 9th of February, 1843, Jamison commenced an action of detinue in the Monroe circuit court, in the State of Alabama, against May, for a negro man slave. By the return of the sheriff, it appears that service of the writ was had on May, but the slave was not found. On the 12th of November, 1844, the parties appeared by attorney, a jury was called, a trial had, and verdict for the plaintiff, in which the value of the slave was fixed at $800, and $250 damages, upon which judgment was rendered that the plaintiff, Jamison, recover the slave or $800, hisvalue, and $250 damages, besides costs. A transcript of this judgment was certified to Arkansas, the residence of May, and an action of debt in the Union circuit court, brought upon it in favor of Jamison against May. On the 24th of October, 1849, the defendaut appeared, by attorney, and interposed three pleas in bar. The first alleged an attempt on the part of the defendant, after the rendition of the judgment in deti-nue, to deliver the slave in discharge of the j udgment, but that the slave died before he had it in his power to do so. The second plea denied all notice of the suit in detinue. The third was a plea of payment. A demurrer was sustained to the first plea, and issue taken upon the second and third pleas. Upon these issues, judgment was rendered for the plaintiff; from which judgment, May appealed to this court, and here the judgment of the circuit court was affirmed. On the 24th day of July, 1851, Jamison sued out execution on said judgment, which was levied upon slaves, the property of May, and thereupon May, with L. F. Lovett, as his security, entered into bond for the delivery of the slaves, on a day therein mentioned, to be sold to satisfy said judgment. The slaves were not delivered on the day of sale, the bond was returned forfeited, and on the 31st day of October, 1851, execution issued on the delivery bond against both May and Lovett, his security. To stay the collection of this execution, this bill is filed. May, in his bill, says that, by the will of his father, this property belonged to his mother during her life time, and that at her death it was willed to himself and his sister, Mrs. Lovett. That the plaintiff, Jamison, acquired his sole interest in the slave by marriage with his mother, who held such life estate. That his mother, the wife of Jamison, separated from him, and came to live with complainant (her son,) and that he took the boy into possession, and hired him out at the instance and under the direction, and for the use and benefit of his mother. That the slave was brought by him to Arkansas, and that, without his fault or neglect, he died before the j udgment was rendered in Alabama; and that his plea, setting forth the death of the slave, since said judgment, was a mistake, committed by his counsel. That he would have interposed a plea setting up the death of the slave before the rendition of the judgment in Alabama, but the health of his family rendered his presence and personal attendance to them indispensably necessary. That his mother, in whom the life estate in the slave vested, is dead, and that since her death, and since the death of the slave, he has bought of Ms sister, Mrs. Lovett, and her husband, their undivided half interest in said slave, and thereby, in fact, is now the sole owner of the same. It will be seen, in this case, that there were two trials and judgments at law, upon and over which that court had exclusive jurisdiction, and wras, in all respects, fully competent to hear and finally determine the matter at issue between them. And in such cases, unless it can be shown that the defendant has been hindered or prevented from making a defence, there can be no good reason for permitting him to evade an issue tendered to him before a court having exclusive original jurisdiction of the subject matter, and in no wise hindered or prevented from exercising such jurisdiction upon a full and fair investigation of the case. In such case, should the defendant, when summoned to defend, decline or fail to do so, it amounts to a prima facie admission that he has no defence to offer, and in case he elects to appear and defend, even though chancery may have concurrent jurisdiction with a court of law of the subject matter at issue, he will (unless under very peculiar circumstances amounting to surprise or fraud, for which he is in no wise responsible, by neglect or otherwise) be held to such election. Garvin et al. vs. Squires et at., 4 Eng. 533. Lawson vs. Bettison, 7 Eng. 401. And it may be safely said, that where a defendant is prevented from making his defence before the common law court by accident, fraud, or other cause not the result of negligence or wrong on his part; and for which, upon an application to the common law court for that purpose, a new trial should be granted, when an application is made by bill to the chancellor to grant such new trial, such defendant should (after setting forth grounds in other respects sufficient) state distinctly the reasons why he failed to apply to the common law court, in the first instance, for a new trial: for there can be no propriety in permitting a defendant to abandon a court of law, which has acquired jurisdiction of the subject matter and the parties, if that court might, upon proper application, have heard and determined the question presented to the chancellor. And it is worthy of remark that, under the most favorable circumstances, courts of chancery have reluctantly exercised jurisdiction in such cases. Smith vs. Lowry, 1 John. Ch. R. 320. Bishop vs. Duncan, 3 Dana 15. It is evident that, in the case before us, if the facts set forth in the complainant’s bill entitle him to any relief whatever, it must be to relief in the nature of a new trial of the action at law; for his defence at the outset, and at the subsequent suit on the judgment, was strictly a legal defence. The action was detinue for a slave, in which both the title to the slave and his value were put in issue. The particular ground of complaint seems to be, first, that the verdict was excessive, because it was rendered for the full value of the slave, when, in truth, the plaintiff, Jamison, had only a life estate in him. Of this, it is impossible for us to judge. We have no means of ascertaining what the life estate or absolute estate was worth, or whether the jury found the value of the one or the ether. But concede that, under the form of action, they were bound to find the whole value of the slave, (which is, to say the least of it, very questionable,) still (although the complainant seems to have stated his case under the impression that the legal effect of the bequest to Lewis May was to vest in his wife, who married Jamison, a life estate in the slave) we do not understand such to be the legal effect of the will, which is made an exhibit, andconstitutespartofthecomplainant’sbill. The testator provides first for his older children, and then provides for Lewis and Elizabeth, his son and daughter, and for his wife Elizabeth, in the following language: “Item 4. I give and bequeath unto my son Lewis, and my daughter Elizabeth, all the other estate I now own not hereby disposed of, and all such other estate as I shall at my (death) own, to be equally dividedbetweenthem,leavingto my wife Elizabeth, during her life or widowhood, a home and comfortable support upon the plantation I now live on, and from the other estate which is personal, hereby -willed to my son Lewis and daughter Elizabeth. 5. The estate above willed and devised to my son Lewis and daughter Elizabeth, in case of the death oí either of them without issue, I will and bequeath to the survivor,” &c. The intention of the testator is too plain to need comment. The residue of his estate without enumeration, was bequeathed to his son and daughter charged with an equitable support for his wife. The case of Maulding et al. vs. Scott et al., decided at the January term, 1852, of this court, fully settles the construction to be given to this will. This slave was given by the mother of Elizabeth May to her and before the death of her husband, whereby (in the absence of some statute of Alabama, of which we are not advised,) the slave became the estate and property of the husband, and passed under his will by the general terms “all other estate I now own not hereby disposed of,” &c., to his children Lewis and Elizabeth, charged, as aforesaid, with a support for the wife of the testator. It follows, therefore, that as Elizabeth, at the time of her marriage with Jamison, had no life estate or other estate in the slave of Cyrus, Jamison acquired none by his marriage with her. In the case before us then, Jamison, in enforcing the collection of the value of a slave to which he never had title from the true owner, who, in connection with his sister, had the absolute title to the slave, yet this is precisely the situation of every suitor, who, notwithstanding his better legal title, loses his suit at law by neglect. In this case, Jamison asserted his claim to this slave; sued for him in a court that had full and complete jurisdiction of the subject matter, and was every way competent to hear and decide the case. May was duly summoned, and appeared to the action. The evidence was heard, and a jury decided by their verdict that the slave was the property of Jamison, not of May, and found his value and damages for his detention. To all this, May made no objection. That trial and judgment must stand, and particularly after two other judgments have been rendered affirming Ja-mison’s right to the value of the slave and damages, unless it can be shown that, by fraud, accident, or other cause, not the fault of the defendant, he has been prevented from making a fair and full defence at law, and this must be shown clearly and circumstantially, and also that he now has it in his power to interpose such defence as would, in all probability, produce a material change in the judgment and decision of the court in his favor. To this point, we will now direct our inquiry. As regards the absence of the defendant at the time the first suit was tried, we may admit that the sickness of his family was a sufficient excuse for his not giving personal attention to the suit, when it was tried; but then it by no means follows that his defence was not as full and complete as if he had been present. Why should he have been present in order to interpose a plea of the death of the slave? We cannot see the necessity for his personal presence for that purpose. He says the slave died in February, 1844; the trial was had in November, 1844, nearly nine months after the slave’s death. Ample time was afforded him, not only to prepare the* pleading, but also to have procured, the evidence ; or if not, he should have applied to the court for further time to enable him to do so. It is wholly unnecessary to extend our remarks upon this point. It has already been definitely settled in the case of Watson et al. vs. Palmer et al., (5 Ark. 501.) There, it is held that a party who seeks to set aside a judgment and get a new trial, by bill in chancery, must show that he has been guilty of no laches, and that his presence in person was necessary at the trial to make a de-fence. In our former investigation of this case, (6 Eng. 377,) we were not called upon to examine the question as to the effect of the-death or loss of the property in suit in an action of detinue, after' suit brought and before judgment. The question there was as to the effect of the death of the slave after judgment; nor is it necessary now for us to determine that point. It may not be amiss, however, to remark that there is not wanting authority for holding such a plea bad, whether the slave died before or after judgment. White vs. Ross, 5 Stew, Porter 123. 4 Bibb Rep. 270. The complainant alleges that, on the trial of the second suit, he was deprived of the benefit of this defence by the mistake of his counsel, who misunderstood his directions, and put in a plea setting up the death of the slave after judgment in Alabama, when in truth he liad instructed his counsel to plead the death of the slave before judgment, in bar of the defendant’s right of recovery in the suit at law upon the transcript of the judgment from Alabama. It is unfortunate for the complainant’s case, if this be true, that he did not seek to have the mistake corrected; but it seems that, so far from this, he relied upon and urged this de-fence not alone in the circuit court, but before this court on error. He admits his personal attendance on the second trial, and we must presume that he understood the nature of his defence : but placing it upon his own grounds, a mistake of his coun-' sel, still it cannot avail him. A suitor is concluded by the acts of his counsel, if unmixed with fraud. Lawson vs. Bettison, 7 Eng. 401. The whole case, when properly understood, resolves itself into this : That the complainant has, by his inattention, or want of skill in conducting his defence in a suit at law, suffered judgment to be rendered against him, when it is quite probable that had he defended with proper industry and skill, his defence would have been successful; and having failed to show any sufficient reason for'not having made such defence, he must abide the consequences ; and it is moreover worthy of remark that his claims to the equitable interposition of the chancellor are far less strong now than if made in reasonable time after the trial in Alabama. Instead of making his application to set aside the verdict and-judgment when he ascertained the result, he has been contesting the right of the'plaintiff at law to have satisfaction of that judgment on legal grounds, and until judgment has been thrice pronounced against him on the same cause of action, at great delay and expense to the plaintiff. Under these circumstances, we must deny the equity of the complainant’s bill, and not alone upon this ground, but because' the judgment upon the delivery bond, the only judgment which can be enforced, is against May and-his security, Lovett, and the execution stayed is against them both, yet Lovett is not made a party to this bill. The court belotv, upon this as well as the other ground of objection stated, should have sustained the demurrer to the bill. The decree must, therefore, be reversed, with costs, and the cause remanded for further proceedings therein to be had according to equity and the rules in chancery. Mr. Justice Scott did not sit.